**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 17-235** |
| **JUAN CARLOS ORTIZ** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Juan Carlos Ortiz and his co-conspirators stole more than $6.8 million from American taxpayers between February 7, 2011 and May 8, 2012.   During these 15 months, the Allentown-based conspiracy used stolen identification information of Puerto Rican residents to submit hundreds of fraudulent tax returns with the Internal Revenue Service ("IRS") and cash the resulting refund checks.   Ortiz's personal involvement in this scheme was multi-faceted. He ran a tax preparation business called Emmanuel Tax Solutions ("Emmanuel") that filed false returns, and he operated a multi-service business called JCO Multiservices Inc. ("JCO Multiservices") that cashed hundreds of fraudulently-obtained refund checks.

On February 14, 2018, Ortiz appeared before the Honorable Joseph F. Leeson, Jr., and pleaded guilty to one count of conspiracy to defraud the United States with respect to claims, in violation of 18 U.S.C. § 286 (Count 1) and one count of conspiracy to steal public money in violation of 18 U.S.C. § 371 (Count 2).   The Presentence Investigation Report ("PSR") has correctly determined that Ortiz has a total offense level of 21, a criminal history category of I, and a sentencing range of 37-46 months' imprisonment under the United States Sentencing Guidelines.   For reasons detailed below, the government respectfully submits that a sentence within that range would best serve the sentencing factors set forth in 18 U.S.C. § 3553(a).

1

## I.     STATEMENT OF THE CASE

### A.     Procedural History

On May 2, 2017, a federal grand jury sitting in the Eastern District of Pennsylvania returned a 2-count indictment, charging Ortiz with one count of conspiracy to defraud the United States with respect to claims, in violation of 18 U.S.C. § 286 (Count 1) and one count of conspiracy to steal public money in violation of 18 U.S.C. § 371 (Count 2).   On February 14, 2018, Ortiz pleaded guilty to both charges, pursuant to a written plea agreement.

### B.     Statement of Facts

Puerto Ricans who reside in Puerto Rico are U.S. citizens who obtain social security numbers as any other U.S. citizen does.    However, Puerto Ricans do not file federal income tax returns unless they are employed by or contract with a federal or state agency in Puerto Rico.    As a result, many Puerto Rican citizens have social security numbers but do not file tax returns.    Ortiz and his co-conspirators capitalized on this legal quirk by stealing the identifiers of Puerto Ricans, using them to submit false and fraudulent tax returns, and then negotiating the fraudulently-obtained refund checks.

Some members of the conspiracy stole identification information of Puerto Rican residents, such as their names and social security numbers.    Some conspirators then used the Puerto Rican identities to file tax returns and claim that the individual identified on the return was entitled to a refund. Some conspirators provided addresses where the refund checks would be sent, and some conspirators then cashed the refund check that were sent to those addresses – or, in some cases, Refund Anticipation Loans ("RALs"), which are loans that banks and other

financial institutions provided to a taxpayer in exchange for an agreement by the taxpayer to pay them back with his or her tax refund.   Ortiz had multiple roles in this conspiracy.

From about February 2011 until November 2011, Ortiz owned and operated Emmanuel, which filed many of the false returns, and from February 2011 until May 8, 2012, he also owned and operated JCO Multiservices, which cashed the fraudulent refund checks and RALs.   Ortiz's co-conspirators included Jessenia Cordero, Juana Maisonet, Maria Paulino, Florentina "Cindy" Peralta, and Amauris Almonte, all of whom have pleaded guilty to similar charges.   Cordero owned and operated several different business entities that provided check cashing, tax preparation, and other services, including MJ & Associates, JT Agency, and Express Tax, all of which were based in and around Allentown.   Peralta owned and operated Alta Check Cashing ("Alta"), a check cashing and money service business in Emmaus, Pennsylvania.

Between February 7, 2011, and May 8, 2012, the conspirators negotiated false, fictitious, and fraudulent tax refund checks and RALs with a total value of approximately $6,874,250.60.   Of this amount, approximately 398 fraudulently-obtained refund checks and RALs with a total value of $2,500,231.60 were negotiated through JCO Multiservices and related business entities owned and operated by the defendant.   All of the tax refund checks had been made payable to Puerto Rican citizens whose identities the conspirators had stolen.   The Treasury Department sent the checks to addresses provided by the conspirators on the fraudulent tax returns.   Once the checks arrived, conspirators delivered them to the defendant. Included among these refund checks and RALs were at least five checks which the IRS had issued in response to false, fictitious, and fraudulent tax filings that had been submitted by JCO Multiservices, and hundreds of other checks which the IRS had issued in response to false,

3

fictitious, and fraudulent tax filings that had been submitted by Emmanuel, using stolen identities of Puerto Rican residents.   The defendant also deposited refund and RAL checks obtained by his co-conspirators into business accounts that the defendant controlled.

The defendant also received proceeds from some of the checks that were negotiated by his co-conspirators, including the two specific checks referenced in Count Two of the indictment: (1) a check for $6,434.83, made payable to a Puerto Rican resident with the initials M.M., which Peralta negotiated at Alta; and (2) a check for $5,360, made payable to a Puerto Rican resident with the initials G.C.., which Peralta negotiated at Alta.

## II.      SENTENCING CALCULATION

### A.      **Statutory Maximum Sentences**

Ortiz is facing the following maximum possible sentences: Count One, conspiracy to defraud the United States with respect to claims, 10 years' imprisonment; a 3 year period of supervised release; a fine of $250,000 or two times the gain or loss, whichever is greater; and a $100 special assessment; Count Two, conspiracy to steal public money, 5 years' imprisonment; a 3 year period of supervised release; a fine of $250,000; and a $100 special assessment.

In total, Ortiz is facing a maximum possible sentence of 15 years' imprisonment, a 3-year period of supervised release), a fine of $500,000 or two times the gain or loss, whichever is greater, and a $200 special assessment.   Forfeiture of all proceeds from the offenses also may be ordered

### B.      **Guidelines Calculation**

The government agrees with all the PSR's Guidelines calculations.   As an initial matter, we agree that under Section § 3D1.2(b) of the United States Sentencing Guidelines,

Counts 1 and 2 are grouped together because the offense level for both is largely determined by the total amount of harm.   The applicable guideline is Section 2T1.1, since the crimes are both tax violations.   Pursuant to U.S.S.G. § 2T4.1(J), the base offense level is 24, because the total tax loss of $6,874,250.60 is more than $3,500,000, but not more than $9,500,000.

Ortiz contends that the loss amount should be $2,500,231.60, resulting in a base offense level of 22, *see* USSG § 2T4.1(I), because that is the total value of the checks that were negotiated through Ortiz's business, JCO Multiservices.   The Guidelines, however, provide that Ortiz is also responsible for "relevant conduct," which is defined to include "(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3.   Ortiz, therefore, is responsible for the $4,316,103.97 in fraudulently-obtained refund checks negotiated by his co-conspirator Jessenia Cordero and the $57,915.03 in fraudulently-obtained checks negotiated by his co-conspirator Cindy Peralta at Alta.

Ortiz communicated frequently with Cordero in particular, and he knew that Cordero and Peralta were negotiating fraudulent IRS checks in furtherance of their conspiracy. Indeed, at his change of plea hearing, Ortiz admitted that his co-conspirators included Cordero and Peralta; and that the conspirators negotiated false, fictitious, and fraudulent tax refund checks and RALs with a total value of more than $6.8 million.   He also admitted to receiving proceeds from two specific checks negotiated by Peralta.   The defendant's objection to

Paragraphs 27 and 35 to the PSR should be overruled.   The loss amount attributable to the conspiracy was more than $3.5 million, and the base offense level is 24.

Ortiz is entitled to downward adjustments, totaling three levels for acceptance of responsibility, pursuant to Sections 3E1.1(a) and (b).   Thus, his total offense level is 21.   He has no criminal history, so his category is I.   Under the Guidelines, therefore, Ortiz's sentencing range is 37-46 months' imprisonment, and a fine of $20,000 to $200,000.

## III.   ANALYSIS

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted), cited favorably in United States v. Friedman, 2011 WL 4470674, * 14 (3d Cir. Sept. 28, 2011); United States v. Cooper, 437 F.3d 324, 329-30 (3d Cir. 2006).   In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the Booker decision.   United States v. Grier, 475 F.3d 556 (3d Cir. 2007) (en banc).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence.   "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it."   Cooper, 437 F.3d at 329.   See also Rita v. United States, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); United States v. Schweitzer, 454 F.3d 197, 205-06 (3d Cir. 2006).

As indicated above, the defendant's properly calculated sentencing range is 37-46 months' imprisonment.   The government respectfully submits that a sentence within that range would best serve the sentencing factors set forth in 18 U.S.C. § 3553(a).   Those factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.   18 U.S.C. §

3553(a).[1]

Sections 3553(a)(4) and (a)(5) specifically direct the Court to consider the applicable guidelines and commentary, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing among similarly situated defendants. Collectively, therefore, they counsel for the imposition of a within-Guidelines sentence. A sentence of 37-46 months' imprisonment would also be appropriate given the nature and circumstances of Ortiz's offenses. *Id.* § 3553(a)(1). In a 15-month period, Ortiz and his co-conspirators essentially stole more than $6.8 million from the IRS. This was a huge fraud against the American taxpayers. Ortiz and his co-conspirators also stolen hundreds of identities of Puerto Rican citizens in order to commit their fraud. Accordingly, Ortiz is fortunate that he has not been charged with aggravated identity theft, because a conviction of that crime would have carried a mandatory two-year sentence, consecutive to any sentence he received for his tax fraud convictions.

Sentencing Ortiz to 37-46 months' imprisonment would also would "reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Such a sentence also is needed to afford adequate deterrence to criminal conduct. *Id.* § 3553(a)(2)(B). Ortiz is not the only person to steal Puerto Rican identities in order to file false tax returns with the IRS; indeed, he had many co-conspirators in this case. Similar identity theft and tax fraud rings have unfortunately become

---

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

all too common in the Eastern District of Pennsylvania, and it is important to send a clear message to these criminals that if they persist in such schemes, they will face a substantial prison sentence.

A sentence of 37-46 months' imprisonment would also serve the sentencing goal of specific deterrence: i.e., to protect the public from further crimes of the defendant.   Id. § (a)(2)(C).   Finally, the sentencing goal of providing Ortiz with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, id. § 3553(a)(2)(D), is not applicable here.

IV.     CONCLUSION

For all the foregoing reasons, the government respectfully requests that this Court sentence the defendant to at a term of 37-46 months' imprisonment.


Respectfully submitted,
WILLIAM M. McSWAIN
United States Attorney


/s/ Mark B. Dubnoff
MARK B. DUBNOFF
Assistant United States Attorney

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Government's

Sentencing Memorandum was served by ECF electronic filing and email upon:


Barry E. Schulman
16 Court Street, Suite 1800,
Brooklyn, New York 11241


Date: May 30, 2018                          /s/ Mark B. Dubnoff
                                            MARK B. DUBNOFF